UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LISA VITTETOE, individually and as Next of Kin )
of Jason Adam Myers, )
                               )
                Plaintiff, )
                                )
v.                                     )       No. 3:17-CV-397-HBG
                                )
BLOUNT COUNTY, et al., )
                                )
               Defendants. )

## <u>MEMORANDUM OPINION</u>

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 36].

By way of background, the Court stayed this matter pending review of Plaintiff's lead counsel's disciplinary matter. *See* [Doc. 105]. The Court notes that the disciplinary matter has been adjudicated, and therefore, the stay in this case is no longer warranted. Accordingly, the Court hereby **LIFTS THE STAY**.

Prior to the Court entering the stay, Defendants filed a Motion to Dismiss [Doc. 78]. Plaintiff responded in opposition to the Motion [Doc. 80], and Defendants filed a Reply [Doc. 85]. The Motion is ripe for adjudication. Accordingly, for the reasons further explained below, the Court finds Defendants' Motion to Dismiss [**Doc. 78**] well taken, and it will be **GRANTED**.

## I.      BACKGROUND

The Court will begin with the allegations in the Amended Complaint [Doc. 26] and then turn to the procedural history.

### A. Allegations in the Complaint

The Complaint [Doc. 1] in this matter was filed on September 1, 2017, and later amended [Doc. 26] on November 17, 2017. Specifically, the Amended Complaint seeks relief under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988. In addition, the Amended Complaint states that this action arises under the Tennessee Governmental Tort Liability Act, Tennessee Code Annotated § 29-20-101, and under common law for intentional and/or negligent infliction of emotional distress, loss of companionship, negligence, negligent supervision, deliberate indifference, and gross negligence.

Plaintiff is the mother of Jason Myers ("Myers"), who is now deceased. [Doc. 26 at ¶ 13]. The Amended Complaint alleges that on or about September 1, 2016, Myers and his father had an argument, and the police were called. [*Id.* at ¶ 19]. The Amended Complaint states that Myers walked to a friend's house and that he and his friend sat outside talking for about thirty minutes. [*Id.* at ¶ 21]. The Amended Complaint states that Myers talked normally, showed no signs of intoxication, and did not smell of alcohol. [*Id.* at ¶ 22]. Further, the Amended Complaint states that Myers acted normally, there were no visible marks on him, and he did not have a bloody nose. [*Id.* at ¶¶ 23-25].

The Amended Complaint avers that several police officers arrived to arrest Myers, who cooperated and complied with all requests of law enforcement during his arrest. [*Id.* at ¶ 27]. Myers was brought into the Blount County Jail on September 2, 2016, at approximately 1:20 a.m. [*Id.* at ¶ 28]. The Amended Complaint states that no mugshot was ever taken of Myers and that Myers was placed in a cell with at least five other inmates. [*Id.* at ¶¶ 29-30]. At approximately 3:00 a.m., an inmate in Myers's cell called for an officer to check on Myers, stating that Myers was barely breathing. [*Id.* at ¶ 31]. At approximately 4:00 a.m., an officer came out of Myers's

cell, and Defendant Atkins was on his cell phone, stating, "You might want to come check him. Can't get him to roll over off his arm. Maybe that's why it's turning blue. He's blue around the mouth." [*Id.* at ¶ 32]. The Amended Complaint alleges that Defendant Atkins had no sense of urgency and did not act as though the situation was an emergency. [*Id.* at ¶ 33]. The Amended Complaint avers that the inmates' calls for help continued and that around 5:00 a.m., another inmate was placed in the cell with Myers. [*Id.* at ¶ 35]. The Amended Complaint states that the inmate could tell that Myers had been beaten. [*Id.*].

The Amended Complaint states that there was blood on the wall beside Myers and that Myers was lying on the ground on his side facing out, gasping for breath, and clearly in distress. [*Id.* at ¶¶ 36-37]. A nurse attempted to take Myers's pulse seven times. [*Id.* at ¶ 38]. The Amended Complaint alleges that other prisoners continued to call the guards to help Myers and that around 6:00 a.m., Defendant Atkins came out of Myers's cell and said, "I need help, and I need help now." [*Id.* at ¶ 40]. The officers removed Myers from his cell, and one inmate said, "You need to do CPR." [*Id.* at ¶¶ 41-42]. Another inmate stated, "I think we just witnessed a murder because we called out for two hours." [*Id.* at ¶ 43]. Defendant Atkins told the inmate to "shut the **** up, or I'll beat you." [*Id.* at ¶ 44]. Finally, the Amended Complaint alleges that at about 6:16 a.m., Myers was given one round of chest compressions and that at approximately 6:45 a.m., Myers was taken by ambulance to the Blount Memorial Hospital where he was declared dead on arrival. [*Id.* at ¶¶ 45-46].

### B.    Procedural History

As mentioned above, the Complaint was filed on September 1, 2017, and later amended on November 17, 2017. [Doc. 26]. Defendants filed their Answers [Docs. 32, 33], and shortly thereafter, Defendant Atkins moved [Doc. 37] for summary judgment and requested that the Court

3

stay discovery in this matter. The Court granted a limited stay of discovery in order to frame the qualified immunity issue. On March 22, 2019, the Court found that Defendant Atkins was entitled to qualified immunity. [Doc. 77]. Specifically, the Court found that there were no facts to which a reasonable jury could conclude that Defendant Atkins used any force against Myers. With respect to Plaintiff's claim of deliberate indifference to Myers's medical needs, the Court found that Defendant Atkins did not possess a sufficient culpable state of mind in denying medical care because he relied on a nurse who checked Myers's vitals several times throughout the night. The Court found the instant circumstance similar to other cases wherein officers have relied on the judgment of medical staff. For the same reasons, the Court dismissed Plaintiff's negligence, battery, intentional infliction of emotional distress, wrongful death, and punitive damages claims against Defendant Atkins. The instant Motion followed.

On July 27, 2019, the Court entered a stay of this matter, given the disciplinary issues with respect to Plaintiffs' lead counsel, Attorney Loring Justice. *See In re Loring Edwin Justice*, No. 1:11-mc-3 (E.D. Tenn. 2011). In April 2020, the Chief District Judge entered an order regarding the disciplinary issues. Given that the disciplinary issues have been adjudicated, the Court finds it appropriate to lift the stay of this matter and resolve the pending Motion to Dismiss.

## II. POSITIONS OF THE PARTIES

Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss this matter for eight reasons. First, Defendants state that the official capacity claims against any defendant should be dismissed because such claims are against Defendant Blount County. Further, Defendants assert that the Blount County Sheriff's Office should be dismissed because it is not an entity capable of being sued. Third, Defendants argue that any claim against unidentified parties should be dismissed because such claims would be barred by the statute of limitations. Fourth,

Defendants state that Defendant Blount County is entitled to be dismissed for any claim under 42 U.S.C. § 1983 because Plaintiff has not pled sufficient facts to support any claims against it for violating Myers's constitutional rights. Fifth, Defendants state that Defendant Blount County is entitled to be dismissed as to any state law claims because they are superfluous or otherwise not cognizable, it has immunity for such claims, and/or Plaintiff has not pled sufficient facts to support any claim. Finally, Defendants assert that Defendant Blount County is not liable for any punitive damages or loss of consortium damages under federal and state law.

Plaintiff argues that Defendants never conferred with her prior to filing the Motion to Dismiss, and therefore, the Motion should be stricken. In addition, Plaintiff states that Defendants cite to the original Complaint and not the Amended Complaint, and therefore, their Motion to Dismiss should be refiled. Plaintiff states that qualified immunity is not available to municipalities. Plaintiff asserts that the Court ruled that Officer Atkins is entitled to qualified immunity under the subjective prong but not the objective prong. Plaintiff argues that under *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978), there is no subjective inquiry with respect to the remaining Defendants.

Plaintiff further asserts that the claims against Sheriff Berrong reflect facts indicative of individual capacity claims, but Defendants make no contention as to which claims are individual versus official. Plaintiff states that she is not required to hypothesize against herself. Plaintiff does not object to the Court dismissing the Blount County Sheriff's Office or the Doe Defendants.

In addition, Plaintiff states that just because Officer Atkins did not use excessive force does not mean that Myers did not experience excessive force. Plaintiff states that she should be permitted to amend the Amended Complaint to plead facts that establish Defendants' liability or from which it may be plausibly inferred. Plaintiff argues that the danger of overdosing in

5

intoxicated inmates is not uncommon and almost certain to reoccur. Plaintiff states that Defendants have not developed their argument on why her state law claims against them should be dismissed. Further, Plaintiff argues that the undersigned did not find that no official committed battery or infliction of emotional distress. Plaintiff argues that the Court should not dismiss her federal claims, but if the Court does so, then it should not address the state law claims. In addition, Plaintiff asserts that she is allowed damages for loss of consortium and loss of the parent-child relationship. Finally, Plaintiff asserts that there is evidence of a conspiracy and that Defendant Blount County did not produce the cell check records.

In their Reply [Doc. 85], Defendants argue that Defendant Blount County may not be held liable for any 42 U.S.C. § 1983 claim because it is the law of the case that no Blount County official committed an underlying constitutional violation and because Plaintiff has not pled sufficient facts that any Blount County official committed an underlying constitutional violation. In addition, Defendants argue that Defendant Blount County cannot be held liable for any 42 U.S.C. § 1983 claim because Plaintiff has not pled sufficient facts to support that there was an unconstitutional policy, practice, or custom that caused any alleged constitutional violation. For the same reason, Defendants argue that Defendant Blount County cannot be held liable for failure to train or failure to supervise. Defendants maintain that Defendant Blount County is entitled to be dismissed as to any state law claims because they superfluous or otherwise not cognizable, it has immunity to such claims, and/or Plaintiff has not pled sufficient facts to support any claim. Defendants argue that they may not be held liable for loss of consortium or punitive damages and that Plaintiff relies on irrelevant facts that are outside the pleadings.

## II.      STANDARD OF REVIEW

Defendants filed their motion pursuant to Federal Rule of Civil Procedure 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.      ANALYSIS

The Court has reviewed the filings in this matter, and for the reasons more fully explained below, the Court will **GRANT** Defendants' Motion [**Doc. 78**].

Before turning to the merits, the Court must address a few preliminary matters. First, Plaintiff argues that Defendants' Motion should be denied because Defendants did not meet and confer prior to filing their Motion. The undersigned does not require the parties to meet and confer prior to moving to dismiss. Second, Plaintiff states that the Court should allow her to amend her Amended Complaint to plead facts that establish Defendants' liability or from which it may be plausibly inferred. Plaintiff has not filed a motion requesting to amend and has not set forth grounds for allowing such amendments. Further, Plaintiff has not complied with the Local Rules. *See* E.D. Tenn. L.R. 15.1 (explaining that parties requesting leave to amend the complaint shall attach the proposed pleading in its entirety and that the "failure to comply with this rule may be grounds for denial of the motion"). In addition, "the Sixth Circuit has held that 'an informal request contained in a brief in opposition to a motion to dismiss is not deemed a Rule 15 motion to amend.'" *Anderson v. City of Fulton, Kentucky*, No. 5:18-CV-032-TBR, 2019 WL 4130800, at *5 (W.D. Ky. Aug. 29, 2019) (quoting *Gonzalez v. Kovacs*, 687 F. App'x 466, 470 (6th Cir. 2017)).

Third, Plaintiff also insists that the Motion to Dismiss should be refiled because it cites to the Complaint as opposed to Plaintiff's Amended Complaint. Defendants' citations to the Complaint appear to be in error, which they corrected in their Reply. Accordingly, the Court finds it unnecessary for Defendants to refile their Motion.[1]

Finally, Defendants move to dismiss the Doe Defendants and the Blount County's Sherriff's Office. Plaintiff does not oppose Defendants' requests. Accordingly, the Court hereby **DISMISSES** the Doe Defendants and the Blount County Sheriff's Office. *See also Garner v.*

---

[1] The Court notes that this is not a situation where Defendants filed their Motion to Dismiss and then Plaintiff filed an Amended Complaint. *Kentucky Press Ass'n, Inc. v. Kentucky*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005) ("Plaintiff's amended complaint supersedes the original complaint, thus making the motion to dismiss the original complaint moot") (other citations omitted).

*Hamilton Cty. Sheriff's Dep't*, No. 1:14-CV-262-CLC-CHS, 2015 WL 4873075, at *1 (E.D. Tenn. Aug. 13, 2015) (explaining that a sheriff's department is not a suable entity under § 1983).

The Court will now turn to Defendants' remaining arguments.

### A. Official Capacity Claims

Defendants state that the official capacity claims should be dismissed because such claims are against Defendant Blount County. Defendants further argue that claims under state law against a sheriff or other public official in his or her official capacity are also claims against the governmental entity for which the public official is an employee.

Plaintiff argues that Defendants have not developed their arguments. Further, Plaintiff states that the claims against Sheriff Berrong reflect facts indicative of individual capacity claims, citing to paragraphs 56-74 of the Amended Complaint.

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Estate of Collins v. Wilburn*, No. CV 16-68-HRW, 2017 WL 149818, at *1 (E.D. Ky. Jan. 12, 2017) (quoting *Kentucky v. Graham*, 473 U.S. 159, 156-66 (1985)).

The Court finds that Plaintiff's claims against the individual Defendants in their official capacities represent claims against the entity, Blount County, and are therefore, redundant and should be dismissed. *See id.* ("Therefore, the claims against the individual Defendants in their official capacities represent claims against the entity for which they are agents—Lawrence County—and, pursuant to *Graham*, its predecessor *Monell v. Department of Social Services of New York*, 436 U.S. 658, 690 (1978), and its progeny, are redundant and should be dismissed."); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:06-0108, 2008 WL

9

501327, at *10 (M.D. Tenn. Feb. 21, 2008) ("To the extent that the Amended Complaint attempts to name Chief Serpas in his official capacity as a defendant to the state law claims, the claims against him in that capacity must be dismissed as well. A claim against Chief Serpas in his official capacity, being identical to a claim against Metro, would fall under the TGTLA and, accordingly, the court would decline supplemental jurisdiction over it.") (citing *Cox v. State*, 399 S.W.2d 776 (Tenn. 1965) (holding that suits against state employees in their official capacities are deemed to be suits against the State itself). Accordingly, the Court will **DISMISS** the Defendants sued in their official capacity.[2]

### B.    Claims Under 42 U.S.C. § 1983

It is well established that municipalities cannot be held liable in a § 1983 action under a theory of respondeat superior. *Guglielmo v. Montgomery Cty., Ohio*, 387 F. Supp. 3d 798, 825 (S.D. Ohio 2019). "To state a municipal-liability claim under § 1983, the plaintiff must allege the deprivation (1) of right secured by the Constitution or laws of the United States, (2) that was directly caused by a municipal policy or custom." *Nichols v. Wayne Cty., Michigan*, No. 19-1056, 2020 WL 4784751, at *3 (6th Cir. Aug. 18, 2020) (citing *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017)). As other courts noted, "The standard for finding a municipality liable essentially amounts to the judicial determination that 'the city itself [decided] to violate the Constitution." *Thames v. City of Westland*, 310 F. Supp. 3d 783, 800–01 (E.D. Mich. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011)). The Sixth Circuit has repeatedly held

---

[2] As mentioned above, Plaintiff asserts that the "claims against Sheriff Berrong reflect facts *indicative* of individual capacity claims," citing to paragraphs 56-74 of the Amended Complaint. [Doc. 80 at 4] (Emphasis added). Plaintiff states that she "does not have to hypothesize against herself." [*Id.*]. Requiring a plaintiff to clearly notify defendants of their potential for individual liability does not equate to a plaintiff "hypothesiz[ing]" against herself." Instead, it is a basic principle that a defendant receives notice of a lawsuit filed against him or her. In any event, however, the Court will discuss the allegations in paragraphs 56-74 of the Amended Complaint further below.

that in order "to prevail in a § 1983 suit against municipal defendants, [a plaintiff] must still allege, and ultimately prove, a constitutional violation: 'if the plaintiff has suffered no constitutional injury, his *Monell* claim fails.'" *Nichols,* 2020 WL 4784751, at *3 (quoting *North v. Cuyahoga County*, 754 F. App'x 380, 389 (6th Cir. 2018)).

In the instant matter, Plaintiff alleges violations of § 1983 for excessive force and deliberate indifference to Myers's medical needs. Plaintiff also alleges that Defendants failed to implement appropriate policies, customs, and practices and that Defendants engaged and approved policies that violated Myers's rights. Defendants move to dismiss all of these claims.

### 1. Excessive Force/Deliberate Indifference

Defendants argue that Defendant Blount County cannot be held liable for any excessive force claims because Plaintiff has not pled sufficient facts to support any official used force against Myers. Defendants further state that the Court did not find that a constitutional violation had been committed when it found that Officer Atkins did not use any excessive force against Myers. Defendants state that pursuant to the law of the case doctrine, the Court should dismiss this claim.

Plaintiff argues that just because the Court found that Officer Atkins did not use any excessive force against Myers does not mean excessive force was not used against Myers. Plaintiff argues that Defendant Blount County does not have a qualified immunity defense.

As mentioned above, Defendants rely on the law of the case doctrine, which provides that "a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990). "The purpose of this doctrine is twofold: (1) to prevent the continued litigation of settled issues; and (2) to assure compliance by inferior courts with the decisions of superior courts." *Id.*[3] "[T]he doctrine

---

[3] Although no party has raised this issue, the Court observes that Defendants moved to dismiss, which generally means that the Court is limited to considering the pleadings. The Court's

merely directs a court's discretion, it does not limit the tribunal's power." *Id.* (internal quotations omitted).

With respect to Plaintiff's allegations of excessive force, in the Court's Memorandum Opinion granting Atkins's motion for summary judgment, the Court concluded that there are no facts to which a reasonable jury could conclude that Atkins used any force against Myers. The Court explained that the instant matter is much different than the typical excessive force case, wherein a court must determine whether the excessive force used was reasonable. Here, as mentioned above, the Court found that there were no facts to conclude that Atkins used any force. In the present matter, Defendants argue that there was no constitutional violation committed because Atkins did not use any force. The Court agrees.

As the Supreme Court has noted, "[N]either *Monell*, nor any of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officer when in fact the jury has concluded that the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). The Sixth Circuit has explained, "There must be a constitutional violation for a § 1983 claim against a municipality to succeed—if the plaintiff has suffered no constitutional injury, his *Monell* claim fails." *North,* 754 F. App'x at 389. The Court notes that "finding that an individual defendant is not liable because of qualified immunity, however, does not necessarily foreclose municipal liability," but "[i]n many cases, a finding that

---

earlier ruling on Atkins's motion for summary judgment was determined by the facts outside the pleadings. Another court has considered this issue and found it appropriate to utilize the law of the case. The Court will follow suit. *Seed v. Vannet*, No. 09-CV-309-SLC, 2009 WL 5216937, at *1 (W.D. Wis. Dec. 22, 2009) ("However, my ruling on the parties' motions for summary judgment, which was made using facts outside the pleadings, must be considered in addressing plaintiffs' motion to dismiss because that ruling is the law of this case.").

12

no individual defendant violated the plaintiff's constitutional rights will also mean that the plaintiff has suffered no constitutional violation." *Id.* at 389-90.[4]

Plaintiff argues that Blount County is not permitted to rely on qualified immunity. Defendants acknowledge that granting an officer qualified immunity does not necessarily mean that the government entity is dismissed. [Doc. 85 at 2]. Instead, Defendants argue that because there are no sufficient allegations or evidence of use of force by anyone, such claims should be dismissed against them. The Court agrees and finds no constitutional violation with respect to the use of force against Myers.

As mentioned above, this case is different than the typical excessive force case. The Court has already found that Atkins did not use excessive force, let alone any force, against Myers. Specifically, the Court noted in the Memorandum Opinion [Doc. 76] that the video submitted shows Myers arriving in the pat-down room at approximately 12:15 a.m. Myers is patted down and then exits the pat-down room and sits on a bench in the intake area for a few minutes. An officer then escorts Myers to a cell. Myers enters the cell, but the officer does not. While Myers can no longer been seen on the video footage, the video simply shows officers occasionally peeking through the window into the cell and occasionally entering the cell throughout the night. Nothing remarkable happens until about 6:20 a.m.

Plaintiff argues, however, that just because Atkins did not use force does not mean that excessive force was not used. The Court generally agrees with that statement, but in this case, the Court has already reviewed the video footage and found that no force was used against Myers.

---

[4] Recently, the Sixth Circuit noted, "It is an open question in this circuit 'whether a municipality's liability under § 1983 is predicated on first finding that an individual officer or employee is also liable.'" *Nichols*, 2020 WL 4784751, at *3 n. 4 (quoting *Rayfield v. City of Grand Rapids, Michigan*, 768 F. App'x 495, 511 n. 12 (6th Cir. 2019)). The Sixth Circuit declined to settle this issue. The undersigned also finds it unnecessary to address this question given the facts in this case.

13

Furthermore, Plaintiff has not set forth any factual allegations in the Amended Complaint relative to other deputies taking any adverse action toward Myers that could be construed as force of any type. To be sure, the Amended Complaint alleges that an inmate could tell that Myers had been beaten [Doc. 26 at ¶ 35], Myers suffered physical injuries after attack by Defendants [*Id.* at ¶ 71], Defendants unjustifiably beat Myers [*Id.* at ¶ 85], and excessive force was used [*Id.* at ¶ 97]. These are the type of bares bones allegations that are subject to dismissal. The Court agrees with Defendants that in this case, Defendant Blount County cannot be held liable because no Blount County official engaged in the use of excessive force against Myers.

With respect to Plaintiff's claim that Defendants denied Myers medical care, Defendants' argument is similar to their argument above. Specifically, Defendants assert that the Court has already held that Atkins did not wrongfully deny Myers medical care. Defendants further explain that the Court has already found that Atkins could not be held liable because he was not deliberately indifferent as he relied on the nurse's judgment. Defendants argue that if Atkins relying upon the nurse's medical judgment was not deliberately indifference, then other officers certainly could not be found to be deliberately indifferent.

Plaintiff states that the Court determined that Atkins is entitled to the qualified immunity under the subjective prong but not the objective prong. Plaintiff argues that under *Monell*, there is no subjective inquiry to save the remaining Defendants.

In the Court's Memorandum Opinion, the Court found that in viewing the facts in the light most favorable to Plaintiff, Myers demonstrated a serious medical need. With respect to the subjective component, the Court found that Atkins did not possess a sufficient culpable state of mind in denying care. The Court explained that the video shows Atkins checking on Myers a number of times throughout the night and that a nurse checked Myers's vitals on several occasions.

Relying on other cases that found qualified immunity where officers relied on the judgment of medical personnel, the Court found that Atkins was not deliberately indifferent to the medical needs of Myers. Accordingly, the Court's previous Memorandum Opinion supports a finding that there was no constitutional violation for deliberate indifference, and there are no specific allegations in the Amended Complaint with respect to another officer's deliberate indifference to Myers's medical needs.

### 2.      Policy or Custom

Defendants assert that Plaintiff has not plead sufficient facts to support that there was an unconstitutional policy, practice, or custom that caused any alleged constitutional violations. Specifically, Defendants argue that Plaintiff only makes conclusory allegations that Sheriff Berrong knew from past litigation, complaints, and incidences that deputies engaged in excessive force and that he actually participated in it; that Sheriff Berrong failed to obtain legitimate and independent investigations and caused a de facto policy of excessive force; and that the Blount County Sheriff's Department has a culture of violence. Defendants submit such allegations are conclusory.

In his response, Plaintiff states that pursuant to their own policies, Defendants should have developed criteria for referring prisoners to hospitals or detoxification centers.

"[U]nder § 1983, local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Connick v. Thompson,* 563 U.S. 51, 60 (2011)). "Municipal liability attaches only where the policy or practice in question is 'attributable to the municipality.'" *Id.* at 387 (quoting *Heyerman v. Cnty. of Calhoun,* 680 F.3d 642, 648 (6th Cir. 2012)). Thus, in addition to alleging a constitutional violation, "a plaintiff bringing a § 1983

claim against a municipality must . . . identify the policy or custom that caused her injury." *Guglielmo v. Montgomery Cty., Ohio,* 387 F. Supp. 3d 798, 825 (S.D. Ohio 2019) (citing *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008)). "In the absence of a formally approved policy, a 'custom' can give rise to municipal liability when the 'practice is so widespread as to have the force of law.'" *Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Further, "a plaintiff must show that the municipality was a 'moving force' beyond the alleged violation." *Id.* at 825-26 (citing *Monell*, 436 U.S. at 694).

> In the context of a prisoner medical care case, a plaintiff must show as follows:
>
> > (1) a clear and persistent pattern of mishandled medical emergencies for pre-arraignment detainees; (2) notice, or constructive notice of such pattern, to the [County]; (3) tacit approval of the deliberate indifference and failure to act amounting to an official policy of inaction; and (4) that the custom or policy of inaction was the "moving force," or direct causal link, behind the constitutional injury.

*McPhail v. Cty. of Macomb*, No. 12-12134, 2014 WL 172275, at *8 (E.D. Mich. Jan. 15, 2014) (quoting *Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) (other citations omitted)).

The Court has reviewed the Amended Complaint and finds Defendants' arguments well taken. As an initial matter, while Plaintiff asserts in her Response that Blount County failed to develop criteria for referring prisoners to hospitals or detoxification centers, the Amended Complaint does not allege such inaction. Specifically, in paragraphs 162-67, titled, "Violation of Civil Rights under 42 U.S.C. § 1983 (Failure to Implement Appropriate Policies, Customs, and Practices)," the Amended Complaint simply alleges that Blount County implemented careless and reckless policies, customs, or practices that allowed employees to use excessive force and allowed or promoted deliberate indifference to inmates' needs. These, however, are legal conclusions.

Further, the Court has reviewed the entirety of the Amended Complaint, and no where has Plaintiff factually asserted that Blount County failed to develop criteria or policies about taking inmates to the hospital or to a detoxication center. *See also* [Doc. 26 at ¶¶ 48-49, 112] (Amended Complaint).

Throughout the Amended Complaint, Plaintiff has alleged that Blount County implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices, including allowing its employees to use excessive force. Similar to the above claim, however, the Amended Complaint contains legal conclusions without factual detail as to Blount County's liability. The Court has also reviewed the allegations against Sheriff Berrong, but the Court agrees with Defendants that such allegations are conclusory. Accordingly, the Court finds Defendants' arguments well taken.

### 3. Failure to Train or Supervise

Defendants state that Plaintiff has not pled sufficient facts to support a claim under a failure to train or supervise theory. Specifically, Defendants state that Plaintiff has not pled sufficient facts to support that Defendant Blount County inadequately trained or supervised its employees and that Plaintiff has not pled sufficient facts to support that Defendant Blount County was deliberately indifferent in the training and supervision of its employees. Defendants state that Plaintiff did not plead that there was a sufficient number of similar constitutional violations to claim that Defendant Blount County was deliberately indifferent. Defendants state that likewise, Plaintiff has not pled sufficient facts to support that any failure in training or supervision actually caused any alleged constitutional violation.

Plaintiff states that the moving force behind Myers's death was the lack of a policy to refer withdrawing or intoxicated individuals to a hospital or a detoxification center. Plaintiff argues that the danger of overdosing in intoxicated inmates is not uncommon and almost certain to reoccur.

"Municipal liability also may be premised on the municipality's failure to adequately train or supervise its employees." *Guglielmo,* 387 F. Supp. 3d at 826. Specifically, "[s]uch a failure can give rise to liability when the training and supervision 'were inadequate for the tasks the [employees] were required to perform, the inadequacy resulted from [the municipality's] deliberate indifference, and the inadequacy actually caused, or is closely related to, [the plaintiff's] injury.'" *Id.* (quoting *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 738 (6th Cir. 2015)). "There are 'at least two situations in which inadequate training could be found to be the result of deliberate indifference.'" *Ouza v. City of Dearborn Heights, Michigan,* --F.3d--, 2020 WL 4499995, at *14 (6th Cir Aug. 5, 2020) (quoting *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003)). The most common approach is for a plaintiff to demonstrate deliberate indifference by "showing that the municipality has failed to 'act in response to repeated complaints of constitutional violations by its officers.'" *Id.* (quoting *Cherrington*, 344 F.3d at 646). The second approach is to show that a municipality failed "to equip law enforcement officers with specific tools to handle recurring situations." *Id.* (quoting *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 409, (1997)).

The Court has considered the parties' positions, and the Court finds Defendants' arguments well taken. Specifically, Plaintiff has not pled sufficient facts to support that Defendant Blount County inadequately trained or supervised its employees. Further, Plaintiff has not pled sufficient facts to show that Defendant Blount County failed to act in response to repeated complaints. The Court notes that in the Amended Complaint, Plaintiff alleges that a former Blount County Sheriff's Deputy is awaiting sentencing for traveling to engage in sexual relations with an alleged minor, but this is irrelevant to the allegations in the present matter.

As mentioned above, in response, Plaintiff asserts that the danger of overdosing in intoxicated inmates is not uncommon and almost certain to reoccur, thus relying on the "single-

incident theory." *See Ouza*, 2020 WL 4499955, at *15 (explaining that a plaintiff may proceed under this theory "if the risk of the constitutional violation is so obvious or foreseeable that it amounts to deliberate indifference for the city to fail to prepare officers for it") (citing *Connick*, 563 U.S. at 63). The problem, however, is that Plaintiff never alleged such in the Amended Complaint. In fact, most of the allegations in the Amended Complaint involve allegations of excessive force. Accordingly, the Court finds Defendants' arguments well taken.

### C. State Law Claims

Defendants assert that Defendant Blount County should be dismissed as to any state law claims because they are superfluous or otherwise not cognizable, it has immunity to such claims, and/or Plaintiff has not pled sufficient facts to support them. In response, Plaintiff argues that in the event the Court dismisses the federal claims, the Court should not address the state law claims. In reply, Defendants maintain that the state law claims should be dismissed.

Before turning to Defendants' arguments, the Court must determine whether it is appropriate to exercise supplemental jurisdiction given that the federal claims will be dismissed. Title 28 U.S.C. § 1367 authorizes federal courts to exercise supplemental jurisdiction. "[I]f there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Veneklase v. Bridgewater Condos, L.C.,* 670 F.3d 705, 716 (6th Cir. 2012) (quoting *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998)). However, a court has the discretion to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) if:

> (1) the claim raises a novel or complex issue of state law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

> (3) the district court has dismissed all claims over which it has
> original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons
> for declining jurisdiction.

"Even when one of these statutory conditions applies, the district court may nevertheless exercise supplemental jurisdiction over state law claims 'if recommended by a careful consideration of factors such as judicial economy, convenience, fairness, and comity.'" *Hollingsworth v. Tennessee Wildlife Res. Agency*, 423 F. Supp. 3d 521, 533 (W.D. Tenn. 2019) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "The district court enjoys 'broad discretion' in this regard." *Id.* (citing *Phaneuf v. Collins*, 509 F. App'x 427, 434 (6th Cir. 2012) (other citations omitted)); *see also Orton v. Johnny's Lunch Franchise*, *LLC,* 668 F.3d 843, 850 (6th Cir. 2012) (explaining that the court's decision to exercise supplemental jurisdiction is "purely discretionary") (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.,* 556 U.S. 635 (2009)).

As an initial matter, neither party analyzes the above law. Instead, Plaintiff merely asserts that the Court should decline exercising supplemental jurisdiction, and Defendants reply by arguing that all state law claims should be dismissed. In any event, as mentioned above, the decision to exercise supplemental jurisdiction is within the undersigned's broad discretion, and the Court finds it is appropriate to exercise supplemental jurisdiction in this case. The undersigned is familiar with the facts in this case, and the instant matter has been pending several years. The Court finds that judicial economy and convenience weigh in favor of exercising supplemental jurisdiction. Fairness to both parties dictates that the Court resolve this matter. Further, the Court finds that there are no concerns with respect to comity.

The Court will now turn to the merits of the parties' arguments with respect to Plaintiff's state law claims.

### 1. Pre-Death Pain, Suffering, and Fright and Wrongful Death

Defendant Blount County argues that it should be dismissed from Plaintiff's claims for pre-death pain, suffering, and fright. In summary, Defendants assert that these are not independent legal claims but instead a component of damages. Plaintiff argues that Defendants' arguments are too skeletal to consider. In reply, Defendants disagree and maintain that pre-death pain, suffering, and fright are part of damages but not claims.

As the Court previously stated, "Plaintiff's claims of pre-death suffering, pain, and fright are simply elements of damages." [Doc. 76]. They are not independent claims. Accordingly, the Court finds Defendants' argument well taken.

Further, Defendants argue that Defendant Blount County should not be held liable for a wrongful death claim as a separate, independent claim or theory. Defendants assert that Plaintiff brought several state law claims under separate theories, asserting that they should be held liable for the wrongful death of Myers. Defendants argue, however, that Plaintiff's separate wrongful death claim is superfluous and should be dismissed. In response, Plaintiff claims that Defendants' arguments are skeletal. In reply, Defendants state that Defendant Blount County did nothing wrongful under state law to support liability. Defendant Blount County argues that as such, it would be superfluous to advance arguments that are merely duplicative of the other state law arguments.

The primary Wrongful Death Statute states, in relevant part, as follows:

> The right of action that a person who dies from injuries received from another, or whose death is caused by a wrongful act, omission, or killing by another, would have had against the wrong doer, in case death had not ensued shall not abate or be extinguished by the person's death but shall pass to . . the person's personal representative.

Tenn. Code Ann. § 20-5-106; *see also* Tenn. Code. Ann. § 20-5-107 (explaining the parties who may institute an action). Tennessee Code Annotated § 20-5-113 explains the damages a party is entitled to in the event that "a person's death is caused by the wrongful act, fault, or omission of another." In filing a claim under the Wrongful Death Statute, the representative does not represent the decedent but instead asserts the representative's own right of action. *Beard v. Branson*, 528 S.W.3d 487, 502 (Tenn. 2017).

Here, Defendants state that for the same reasons it advanced for dismissing the state law claims, this claim too should be dismissed. The Court agrees. Specifically, with respect to the use of force argument Plaintiff has pled, the Court has already found that there was no force used against Myers. In addition, the Court found that Atkins relied on the nurse's judgment when checking Myers's vitals. Accordingly, the Court finds that Plaintiff's claim for wrongful death will also be dismissed.

### 2. Blount County's Immunity

Defendant Blount County argues that it enjoys immunity as to any alleged battery, false arrest, and the intentional infliction of emotional distress to Myers, citing Tennessee Code Annotated § 29-20-205. Further, Defendant Blount County states that it is the law of the case that no Blount County official committed the tort of battery or intentional infliction of emotional distress.

Plaintiff responds that when the Court granted Atkins qualified immunity, the undersigned did not rule that Myers was not battered. In addition, Plaintiff states that the Court did not rule on the emotional distress claim. Plaintiff states that she intended to and should be allowed to make a claim for negligent infliction of emotional distress. Plaintiff states that she does not follow Defendant Blount County's argument regarding Tennessee Code Annotated § 29-20-205 and that

Tennessee Code Annotated § 8-8-302 authorizes suits against a county based on the acts of the deputy sheriff. Further, Plaintiff states that Blount County's immunity is not waived if the action arises out of negligent conduct, which Plaintiff has alleged in the Amended Complaint. In the alternative, Plaintiff requests leave to amend the Complaint to allege a negligence claim.

Defendants state that Tennessee Code Annotated § 8-8-301 is not a basis to hold Defendant Blount County liable because the statute only applies to acts and failures to act on or before May 2, 2017. Defendant Blount County states that prior to this date, the statute did not authorize a lawsuit against a county. Defendant Blount County states that even if it did, the Tennessee Governmental Tort Liability Act ("TGTLA") provides it with immunity for false arrest, battery, and intentional infliction of emotional distress claims that arise out of alleged civil rights violations. Defendant Blount County states that as to any negligent use of force claims or negligent claims based on medical care, it is the law of the case that it is not liable.

Both parties cite to the Sheriff's Statute, Tennessee Code Annotated § 8-8-301 *et seq.*, so the Court will begin here. Specifically, Tennessee Code Annotated § 8-8-302 provides as follows:

> Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

Recently, on May 2, 2017, the definition of "deputy" was expanded to include a jailer. Tenn. Code Ann. § 8-8-301(b). The statute expanding the definition of "deputy," however, applies to "acts and failures to act on or after" May 2, 2017. Tenn. Code Ann. § 8-8-301(b). As Defendant Blount County noted, the incident in this case occurred on September 1, 2016. Thus, the above statute does not apply.

As Defendant Blount County argues, prior to May 2, 2017, courts held that the Sheriff's Statute did not authorize a suit against a county for the wrongful acts of jailers. *Lundy v. Knox Cty., Tenn.,* No. 3:13-CV-588-TAV-HBG, 2014 WL 1491235, at *4 (E.D. Tenn. Apr. 15, 2014) (finding that the alleged acts of the jail personnel in plaintiff's complaint do not fall under the limited immunity waiver of Tenn. Code Ann. § 8–8–302 because jail personnel are not considered sheriffs' deputies under the statute).

Finally, the Court agrees with Defendant Blount County that the TGTLA grants immunity in this case for the alleged torts. "The county's liability for torts committed by its employees and agents is governed by the GTLA." *Lundy,* 2014 WL 1491235, at *3. Specifically, the TGTLA states as follows:

> Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

Tenn. Code Ann. § 29-20-201. Further, the TGTLA provides

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> > (2) False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights.

Tenn. Code Ann. § 29-20-205.

Pursuant to the above statute, Defendant Blount County is also granted immunity for claims of intentional infliction of emotional distress. The Court finds Plaintiff's remaining tort claims fall under the civil rights exception. Specifically, in *Johnson v. City of Memphis*, 617 F.3d 864,

872 (6th Cir. 2010), the Sixth Circuit Court of Appeals affirmed the district court's ruling that "[a]ll of Plaintiff's claims against the City as an employer are in essence claims for violation of [plaintiff's] constitutional rights." *Id.* In *Johnson*, plaintiff appealed the district court's denial of her motion to amend to add a negligence claim, finding that the claim was futile given the city's sovereign immunity." *Id.* at 871. The Court stated, "TGTLA's 'civil rights' exception has been construed to include claims arising under 42 U.S.C. § 1983 and the United States Constitutional." *Id.* at 872. The Sixth Court noted that the district court's finding that plaintiff's amendment fell under the civil rights exception was "consistent with the results reached by the majority of district courts addressing this question." *Id.* (citing *Campbell v. Anderson County,* 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010) ("These torts are alleged to have been committed solely in the context of the violation of [plaintiff's] civil rights-this is in essence a civil rights suit.")).

Similarly, the Court has reviewed the Amended Complaint in this case and finds Plaintiff's alleged torts were committed in the context of the alleged violations of Plaintiff's civil rights. As the Court in *Campbell* noted, "[T]his is in essence a civil rights suit." 695 F. Supp. 2d at 778. Accordingly, Defendant Blount County's arguments are well taken, and it has immunity with respect to Plaintiff's alleged torts.

Further, the Court finds that Plaintiff did not bring a claim for negligent infliction of emotional distress. *See* [Doc. 26] (Amended Complaint). Plaintiff uses the phrase "negligent infliction of emotional distress" in paragraph 1 of the Amended Complaint but no where else is negligent infliction of emotional distress pled in the Amended Complaint.

With respect to the negligent use of force and negligent medical care provided, the Court agrees with Defendant Bounty County that these claims should also be dismissed. In the previous Memorandum Opinion, the Court found no reasonable inference that force was used against

Myers. Further, the allegations in the Amended Complaint present only speculation and conjectures that a Blount County official used force. With respect to the negligent medical care allegation, the undersigned already noted that a nurse checked on Myers several times throughout the night. Accordingly, the Court finds Defendants' arguments well taken.

### 3. Consortium and Punitive Damages

Defendant Blount County asserts that it is blackletter law that punitive damages are precluded in suits against local government entities. Defendant Blount County states that the Tennessee Supreme Court has found that a government entity may not be held liable for punitive damages. Further, Defendant Blount County states that based on the law of the case, it cannot be held liable for punitive damages because no Blount County official engaged in any act that would support such an award. Finally, Defendant Blount County asserts that Plaintiff cannot claim a loss of consortium claim under 42 U.S.C. § 1983 and that the law of the case dictates that no Blount County official engaged in any act that would support a loss of consortium claim.

Plaintiff asserts that Myers passed away and that even if his rights are personal, the administrator of the estate is allowed to pursue his claims. Plaintiff states that the Tennessee Wrongful Death Act and negligence claims allow for consortium damages for the death of a child. Plaintiff states that even if punitive damages are not covered under § 1983 or the TGTLA, Plaintiff may recover punitive damages under Tennessee Code Annotated § 8-8-302.

In its reply, Defendant Blount County maintains that it cannot be held liable for any loss of consortium or punitive damages. In addition, Defendant Blount County states that the Sheriff's Statute is not a basis to hold it liable for punitive or consortium damages under state law. With respect to the § 1983 claim, Defendant Blount County argues that a parent may not bring such a claim as an individual for any alleged violation of another's constitutional rights.

As explained above, Tennessee Code Annotated § 8-8-302 is not applicable to the present matter, and therefore, punitive damages are not recoverable thereunder. With respect to Plaintiff's claim for punitive damages, "A municipality is immune from punitive damages under both 42 U.S.C. § 1983 and the [T]GTLA." *Crowley v. Anderson Cty., Tennessee*, No. 3:17-CV-169, 2018 WL 8919930, at *11 (E.D. Tenn. Feb. 15, 2018) (internal citations omitted). With respect to the loss of consortium claim, "A § 1983 claim cannot serve as the foundation for loss of consortium claim because a section § 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort." *Boyer v. Lacy*, No. 14-CV-11503, 2015 WL 13307075, at *10 (E.D. Mich. July 15, 2015), *aff'd*, 665 F. App'x 476 (6th Cir. 2016) (citing *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000)). Even assuming the claim were cognizable, it would fail because the underlying § 1983 claim fails for the reasons stated above. *Id.* (explaining that even if the loss of consortium claim were cognizable, plaintiff's claim would fail because the underlying § 1983 claim fails for the reasons stated above). Finally, as the Court has dismissed the state law claims, there is no basis for finding punitive damages or loss of consortium based on the state law allegations.

### 4. Cell Check Records

Plaintiff argues that there is evidence of a conspiracy to cover up missing evidence, and therefore, Defendants' Motion should be denied. Plaintiff argues that Defendant Blount County represented to the Court that it had produced its entire file with respect to the investigation of the circumstances of Myers's death but during Atkins's deposition, Atkins testified that the jail facility requires a jailer to document cell checks. Plaintiff states that Atkins testified that cell checks are notations about what each prisoner is doing when the officer checks on him or her. Plaintiff,

however, has not explained how possessing such records would alter the above analysis. Accordingly, Plaintiff's argument is not well taken.

## IV.  CONCLUSION

Accordingly, for the reasons set forth above, the Court will **GRANT** Defendants' Motion to Dismiss [**Doc. 78**].  A separate Judgment will enter.

ORDER ACCORDINGLY:

United States Magistrate Judge